IN THE MATTER OF THE TRANSFER INHERITANCE TAX ASSESSMENT IN THE ESTATE OF CHARLES F. WALLACE, DECEASED.

JOSEPH C. CORNWALL AND FIDELITY UNION TRUST COMPANY, A NEW JERSEY BANKING CORPORATION, EXECUTORS OF THE LAST WILL AND TESTAMENT OF CHARLES F. WALLACE, DECEASED, APPELLANTS, v. WILLIAM KINGSLEY, ACTING DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 29, 1968—Decided April 25, 1968.

Before Judges GAULKIN, LEWIS and KOLOVSKY.

*Mr. F. Earl Walter, Jr.* argued the cause for appellants (*Messrs. Shanley & Fisher,* attorneys; *Mr. John Kandravy,* on the brief).

*Mr. Stephen G. Weiss,* Deputy Attorney General, argued the cause for respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney; *Mr. Elias Abelson,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

GAULKIN, S. J. A. D. The Transfer Inheritance Tax Bureau of the Division of Taxation, Department of the Treasury (hereafter the State) ruled that (a) the testamentary transfer of the residue of the estate of Charles F. Wallace to the "Trustees of the Florence Murray Wallace Fund" is subject to an inheritance tax of $993,606.29, and (b) the proceeds of certain refund annuity contracts which, upon the death of the testator, passed to The Eljabar Foundation are subject to a transfer tax of $22,065.65. The executors appeal, claiming that the transfers are exempt under *N. J. S. A.* 54:34–4(*d*). We agree and reverse.

*N. J. S. A.* 54:34–4(*d*) exempts from transfer inheritance tax

"That part of the estate of any decedent which passes to, for the use of or in trust for any educational institution, church, hospital, orphan asylum, public library or bible and tract society or to, for the use of or in trust for any institution or organization organized and operated exclusively for religious, charitable, benevolent,

scientific, literary or educational purposes, including any institution instructing the blind in the use of dogs as guides, no part of the net earnings of which inures to the benefit of any private stockholder or other individual or corporation; provided, that this exemption shall not extend to transfers of property to such educational institutions and organizations of other States, the District of Columbia, territories and foreign countries which do not grant an equal, and like exemption of transfers of property for the benefit of such institutions and organizations of this State."

Testator died in 1964. The Eljabar Foundation (hereafter the Foundation) was organized in 1933 as a nonprofit corporation pursuant to *N. J. S. A.* 15:1-1 *et seq*. Its certificate of incorporation provided that it was "* * * to collect and expend funds exclusively for philanthropic and welfare work, either directly or through other philanthropic and welfare organizations." The Florence Murray Wallace Fund (hereafter the Fund) is a trust created April 24, 1958 by a trust agreement between testator's three daughters, grantors, and testator, the husbands of the three grantors and one Parry, trustees. The trust agreement provided:

"THIRD: The FUND shall be a public charitable trust created under the laws of the State of New Jersey and shall be governed by, and construed in accordance with, the laws of the State of New Jersey. The FUND is organized and shall be operated exclusively for religious, charitable, scientific, literary or educational purposes or for the prevention of cruelty to children or animals and no part of the FUND's activities shall be the carrying on of propaganda or otherwise attempting to influence legislation, or participating in or intervening in (including the publishing or distributing of statements) any political campaign on behalf of any candidate for public office."

The State concedes that both the Foundation and the Fund are organized and operated for charitable purposes. The United States Internal Revenue Service has classified them as tax exempt charitable organizations under 26 *U. S. C. A.* § 501(c)(3).

The State argues that the transfers nevertheless are not exempt under *N. J. S. A.* 54:34-4(d) but taxable under *N. J. S. A.* 54:34-2(d).

I

The State points out that the trustees of the Fund have absolute discretion in the selection of the religious, charitable, scientific, literary or educational institutions which are to receive money from the Fund; and that the trust agreement provides that the contributions shall be made "* * * in such amounts and to such extent as the Trustees, in their sole and exclusive judgment and discretion, shall determine to be reasonable in order to carry out the purposes of the FUND," and gives the trustees complete discretion in investing the assets and wide discretion in what shall be considered income and what principal. The State therefore calls the Fund a "conduit trust," which seems to us an apt description. Such trusts, says the State, are not exempt because "in order for a gift to be exempt * * * it must be identified with a *particular* institution." We understand the State's argument to be that a gift directly to a charitable institution to help it carry on its work would be exempt; a gift to X in trust for the institution would be exempt; a gift to X in trust for a charitable institution to be selected by the trustee from a number named by the grantor would be exempt; but a gift to X in trust for any charitable institution he chose would not be exempt.

We find nothing in the statute which makes the distinction urged by the State. However, the State argues that a study of the history of the statute and its various changes and amendments proves that the Legislature intended not to grant exemption to conduit trusts. The State shows that conduit trusts have been severely criticized in many speeches, reports and other writings which have received wide publicity. It argues that in 1962, when *N. J. S. A.* 54:34–4 (*d*) was recast into its present form, the criticism of conduit trusts was well publicized, and the Legislature must have known of it. Therefore, says the State, we should assume that the Legislature intended to avoid giving conduit trusts exemption.

The State points out that conduit trusts are not required to account, are not supervised, and (except in the rare case in which something causes the Attorney General to ask for one) render no accounting to anyone because there are no named beneficiaries to call the trustees to account. Consequently, such trusts are easily manipulated for and diverted to other than charitable purposes, and frequently they may be merely devices to insure control of corporate enterprises and endow individuals, usually relatives, with the power and the incidental benefits which control of large sums, tax free, gives. Legislation may be needed to require accounting by conduit trusts, but that does not justify condemning all such trusts.

Where a conduit trust is so administered as not to truly serve the charitable purposes for which it was created, the trust is, of course, not exempt. Here, as we have said, the State has examined the statement of receipts and disbursements of the Fund and the Foundation and concedes that both have been operated for the charitable purposes for which they were created. Consequently they are entitled to whatever exemption the language of the statute allows.

Some of the severest criticism of conduit trusts has been made in the federal Congress, and yet the federal law has not excluded conduit trusts from exemption. And the statement which accompanied Senate Bill No. 177 (1962), which became the present *N. J. S. A.* 54:34-4(*d*) said:

"New Jersey is one of the few States which subjects *churches, hospitals* and *other charities* to taxation on gifts received by will.

The purpose of this bill is to exempt *our charities* from such taxation and thereby make the New Jersey law uniform with that of the other States and with the exemptions accorded by Federal law." (Emphasis added)

In short, we find nothing in the statute which supports the distinction urged by the State. The Fund's activities come squarely within *N. J. S. A.* 54:34-4 (*d*) and therefore the transfer to it was exempt.

## II

■ The State's argument against exemption of the transfer of the balances due under the annuity contracts to the Foundation is the same as its argument against exemption for the gift to the Fund. What we have said with reference to the gift to the Fund applies to the gift to the Foundation.

The assessments are set aside.